UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHARON CROOK,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SHORELINE, KING COUNTY SHERIFF'S OFFICE, SUSAN RAHR, DANIEL PINGREY, KATHLEEN LARSON, ROBERT OLANDER,<br><br>　　　　　　　Defendants. | CASE NO. 10-cv-01977-RSM<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant City of Shoreline's amended motion for summary judgment. Dkt. # 45.[1] The Court has reviewed the motion, Plaintiff's response, Defendant's reply, and all documents submitted in support thereof. Having carefully reviewed the foregoing, together with the balance of the record, the Court **GRANTS** the motion and **DISMISSES** this matter **WITH PREJUDICE**.

---

[1] As per stipulation of the parties, Defendants Susan Rahr, Daniel Pingrey, Kathleen Larson, and Robert Olander, and King County Sheriff's Department have been voluntarily dismissed from this action. As such, the instant motion is filed on behalf of the City of Shoreline, the only remaining Defendant.

# **I. BACKGROUND**

This dispute arises out of an employment relationship between Plaintiff Sharon Crook and Defendant City of Shoreline. Between April 1998 and February 2004, Plaintiff was an employee of the City and served in the role of administrative assistant for the Shoreline Police Department. Although Plaintiff was employed by the City, the remaining staff members at the Police Department were employees of King County, which provided police services to the City pursuant to a contract.

At certain times during the course of Plaintiff's employment with the City, King County did not staff the position of county clerk. During such times, Plaintiff's supervisors asked her to assume the responsibilities of that position in addition to her existing workload for the City.[2] Although Plaintiff complained that the resulting workload was excessive, she claims that Defendant nevertheless required her to continue covering the county clerk position. Plaintiff claims that she fell behind on her work as a result of this dual assignment.

During the course of discovery, Plaintiff has admitted to a number of deficiencies in her job performance, ostensibly on account of her heavy workload, including her failure to timely process checks, pay bills, or process government applications and violations. Plaintiff also admits to misplacing checks entrusted to her and to not properly filing certain documents and records.

In November 2008, Plaintiff's supervisors at the County conducted an "investigation" into reports that she was not completing work assigned to her. On January 20, 2009, the City sent a memorandum to Plaintiff (1) informing her that the investigation turned up various deficiencies in her job performance, mostly related to her failure to complete assigned work, (2)

---

[2] Even though Plaintiff was an employee of the City, Plaintiff claims that King County billed the City for the work she provided when filling in as county clerk.

1 scheduling a pre-disciplinary hearing regarding those findings, (3) advising her of her right to
2 present evidence and argument at the hearing, in addition to her right to bring a representative,
3 and (4) advising her that termination was a potential consequence of the conduct in question.
4 Dkt. # 35, Ex. 18. The City subsequently conducted such a hearing, which Plaintiff attended.

Following the hearing, the City elected to terminate Plaintiff's employment. The City afforded Plaintiff the right to appeal its decision to the City Manager, which Plaintiff did with the assistance of counsel. That appeal was unsuccessful.

Plaintiff responded by initiating this action in the King County Superior Court, which Defendants removed to this Court pursuant to 28 U.S.C. § 1441. In her complaint, Plaintiff claims that Defendant violated her rights by assigning her an excessive workload. Plaintiff also claims that she engaged in a number of protected activities that upset her supervisors, and that she was fired in retaliation for that conduct. In particular, Plaintiff claims that in 2002 she expressed concern over the County's practice of billing the City for work that she had provided on behalf of the County. Plaintiff also asserts that in 2006, when an officer in the Shoreline Police Department filed a complaint against the sergeant, she provided the officer in question with a copy of documents supporting his claim.

Plaintiff also claims to have informed her supervisors that she intended to take twelve weeks of medical leave in order to have surgery on her ailing hips and knees -- a condition she characterizes as a "chronic disability." Plaintiff asserts that she was fired on the basis of her disability and on account of her age.

Although the complaint does not contain a succinct statement of Plaintiff's various causes of action, and makes almost no effort to delineate the factual predicates for her various claims, Plaintiff appears to assert the following causes of action: (1) hostile work environment and

retaliation under 42 U.S.C. §§ 1983 and 1985; (2) wrongful termination under state law; (3) disability discrimination under the American With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and RCW 49.60.180; (4) age discrimination under RCW 49.44.090, (5) intentional infliction of emotional distress; and (6) breach of contract. Defendant has moved for summary judgment as to all claims. Dkt. # 45.

### III. DISCUSSION

A. Legal Standard

Summary judgment is proper if the pleadings, discovery, affidavits and disclosure materials on file show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a) & (c) (as amended December 1, 2010). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986). The Court resolves any factual disputes in favor of the nonmoving party only when the facts specifically attested by each party are in contradiction. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

B. Discrimination Under 42 U.S.C. §§ 1983 and 1985

Plaintiff argues that the excessive work load assigned to her by the City and County, together with the investigation into her work performance, violated her rights to due process and

equal protection under the Fourteenth Amendment, in addition to her freedom of speech under the First Amendment. Compl. ¶¶ 2-5.

Defendant argues that any alleged due process violations cannot form the basis for liability because there is no dispute that it provided Plaintiff with a pre-disciplinary hearing and an appeal prior to terminating her employment. The Court agrees. As the Supreme Court has explained:

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (citation omitted).

As set forth above, Defendant provided Plaintiff with such notice and opportunity. Accordingly, Plaintiff's due process claims must be dismissed as a matter of law. *Id.*; *Dalton v. Wash. State Dep't of Corr.*, 344 Fed. Appx. 300, 304 (9th Cir. 2009) (dismissing due process claims where plaintiff "received written notice, was afforded both a pre-termination hearing and a follow-up meeting (in which he was represented by the Union), was confronted with the evidence against him, and was allowed to tell his story").

Plaintiff's equal protection claim fares no better. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from denying "any person within in its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Where, as here, "an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a class of one claim." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478 (9th Cir. 2008). In order to prevail on such a claim, the plaintiff

must establish that the defendant "intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id*.

Not only does Plaintiff fail to establish that Defendant treated her differently from similarly situated employees, she has failed to identify any similarly situated employees at all. Indeed, the only argument Plaintiff advances on this issue is that she was "treated differently than similarly situated [County] employees" because, unlike County employees, she was employed by the City and was therefore not covered by the King County collective bargaining agreement. Setting aside the fact that Plaintiff offers no explanation as to why such a distinction makes any difference to the outcome of this case, the differences she points out between herself and King County employees only serve to demonstrate that they were *not* similarly situated. Because Plaintiff has failed to identify any similarly situated employees who Defendant treated differently than herself, Plaintiff's equal protection claim cannot form the basis for liability.

Plaintiff is also unable to establish a violation of her First Amendment rights. While there is no question that Plaintiff had a First Amendment right to express her opinion regarding the County's alleged practice of billing the City for her work, Plaintiff has presented no direct evidence that the City retaliated against her on that basis, and the circumstantial evidence she has presented on this point does not create a genuine issue of material fact. Indeed, while a defendant's motivation is typically considered a question of fact to be resolved by the jury, the Ninth Circuit has consistently held "'that circumstantial evidence [creates] a genuine issue of material fact on the question of retaliatory motive' where the plaintiff produces evidence both that (1) his employer knew of his speech and (2) there is a 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Dalton*, 344 Fed. Appx. at 302 (*citing Keyser v. Sacramento City Unified School Dist*., 265 F.3d 741, 751 (9th Cir. 2001)).

Here, there is no dispute that Plaintiff was fired approximately nine years after making the statement in question. Given the extensive time lapse between the statement in question and the termination of Plaintiff's employment, no reasonable finder of fact would conclude that there was a "proximity in time between the protected action and the allegedly retaliatory employment decision." *Id*. The same result follows with respect to Plaintiff's alleged support of her co-worker in connection with his complaint against the police sergeant. Indeed, even if the Court assumes that the First Amendment protects such conduct under the circumstances presented here, there is no dispute that several years elapsed between the time she provided such support to her co-worker and the date of her termination. No reasonable finder of fact could draw a causal link between those events or conclude that Plaintiff was fired for providing such support. *Id*.

Because Plaintiff cannot maintain a claim for violation of her due process, equal protection, or First Amendment rights, her claims under 42 U.S.C. §§ 1983 and 1985 must be dismissed.

C. <u>Wrongful Termination</u>

Under Washington law, at-will employees may generally quit or be fired for any reason or no reason. *See Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 891 (1977). This general rule is subject to the exception that employees may not be discharged for reasons that contravene public policy. *Gardner v. Loomis Armored*, 128 Wn.2d 931, 935 (1996). Where such a termination occurs, the aggrieved employee may bring an action for wrongful termination. *Id*. Washington courts have recognized such a claim within four different situations: (1) where the employee is fired for refusing to commit an illegal act; (2) where the employee is fired for performing a public duty or obligation, such as serving jury duty; (3) where the employee is fired for exercising a legal right or privilege, such as filing workers' compensation claim; and (4)

where the employee is fired in retaliation for reporting employer misconduct. *Id*. at 936.

Here, Plaintiff predicates her wrongful termination claim upon two separate grounds, both of which she claims contravene Washington public policy: (a) that Defendant fired her for failing to keep up with an unusually heavy workload, and (b) that Defendant fired her for supporting co-workers who had employment disputes with the County.[3] The first of these grounds cannot form the basis of a wrongful termination claim, as assigning an employee a heavy workload, without more, does not violate any public policy.

Although the Court assumes that Plaintiff had a legal right to support the claims of her co-workers in the manner described in the complaint, Plaintiff has not presented any evidence to suggest that the City or its employees had any knowledge of the fact that her co-workers pursued claims against the County, or that the City knew Plaintiff had offered support to those co-workers. In the absence of any such evidence, no reasonable jury could conclude that Defendant fired Plaintiff on account of support she claims to have provided the County employees in question. In any event, as explained above, no reasonable juror could draw a causal link between the support Plaintiff claims to have provided to her co-workers and Plaintiff's termination years later.

C. <u>Disability Discrimination</u>

Both the ADA and RCW 49.60.180 prohibit employers from discriminating against their employees on the basis of disability. Plaintiff alleges that, in 2007, she advised her supervisors at the County that she intended to have two knee replacements and a hip replacement prior to her retirement. Although Plaintiff claims that the City terminated her employment in response to

---

[3] In addition to her support for the Shoreline police officer referenced above, Plaintiff has suggested that Defendant was also motivated by her support for a former co-worker who had an employment dispute with the City.

ORDER - 8

these disclosures, her disability discrimination claims must fail because she has provided no evidence -- nor even an allegation -- that she informed anyone at the City of her intention to undergo the procedures in question. In the absence of such evidence, Plaintiff cannot satisfy the statutory requirement that the City (as opposed to other defendants who have now been dismissed) engaged in the discriminatory conduct at issue "on the basis of" or "because of" a disability. 42 U.S.C. § 12112; RCW 49.60.180(2).

D. Age Discrimination

Plaintiff asserts a state law claim of age discrimination pursuant to RCW 49.44.090, which prohibits employers from discriminating against their employees "because an individual is forty years of age or older." In order to establish a *prima facie* claim of age discrimination under RCW 49.44.090, the employee must demonstrate that she (1) was within the statutorily protected age group; (2) was discharged by the defendant; (3) was doing satisfactory work; and (4) was replaced by a younger person. *Grimwood v. Univ. of Puget Sound*, 110 Wn.2d 355, 362 (1988). Where the plaintiff fails to make out a *prima facie* case of age discrimination, the employer is entitled to summary judgment. *Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 490 (1993).

Here, the Court need not determine whether Plaintiff has made out a *prima facie* case of age discrimination under RCW 44.49.090 because the record is devoid of evidence suggesting that Defendant or its employees were motivated by Plaintiff's age. The only "evidence" Plaintiff presents in support of this claim is her own self-serving declaration, unsupported by detailed facts or documentary evidence, that in "early 2007" she informed her supervisors at the County that she was contemplating hip and knee surgery at some unspecified time in the future. On the basis of that alleged communication, together with the fact that the City fired her approximately

two years later, Plaintiff concludes that the City must have been motivated by her age. This claim cannot withstand summary judgment, as "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Plaintiff's age discrimination claim must be dismissed.

E. <u>Intentional Infliction of Emotional Distress</u>

Plaintiff contends that Defendant's conduct constitutes intentional infliction of emotional distress ("IIED"). Plaintiff has not shown facts supporting the necessary elements of an IIED claim.

A party claiming IIED must show each of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). Plaintiff's evidence fails to establish any of these elements.

"The first element [of IIED] requires proof that the conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Robel v. Roundup Corp.*, 148 Wn.2d 35, 51 (2002). The conduct at issue here is neither outrageous nor extreme. Assigning an employee a heavy workload, without more, cannot form the basis for an IIED claim.

The second IIED element requires intentional or reckless conduct. *Dicomes v. State*, 112 Wn.2d 612, 631 (1989). Because Plaintiff offers no specific facts showing Defendant's mental state, she fails to establish the second element of her IIED claim.

Finally, although Plaintiff makes the conclusory assertion that she has suffered emotional distress as a result of her termination, Dkt. # 50-2, Ex. 2 ¶ 22, that claim is wholly unsupported

by detailed facts or evidence. Such a self-serving declaration cannot overcome a motion for summary judgment. *See Publ'g Clearing House, Inc*., 104 F.3d at 1171.

      F.      <u>Breach of Contract</u>

Plaintiff claims that her termination constitutes a breach of contract on the part of the City. This claim must be dismissed because Plaintiff has admitted that she was an at-will employee. *Roberts*, 88 Wn.2d at 891. Although Plaintiff makes the conclusory assertion that the parties were bound to an unwritten employment agreement based upon the job description of her position, she offers no evidence in support of that claim. As noted elsewhere, Plaintiff's conclusory assertion that such a contract exists, without any detailed facts or supporting evidence, does not create a genuine issue of material fact. *See Publ'g Clearing House, Inc*., 104 F.3d at 1171.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant's motion, Dkt. # 45, is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

Dated this 14 day of March 2012.

                                        RICARDO S. MARTINEZ
                                        UNITED STATES DISTRICT JUDGE